# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JOSHUA GRANT H.,[1]        )
                           )
       Plaintiff,          )
                           )    CIVIL ACTION
v.                         )
                           )    No. 18-2326-JWL
NANCY A. BERRYHILL,        )
Acting Commissioner of Social Security, )
                           )
       Defendant.          )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff claims the ALJ failed adequately either to weigh the treating source opinion of Dr. Bradshaw or to consider the other evidence from the Veteran's Affairs Department--the VA disability determination and the Compensation & Pension examinations (hereinafter C&P exams) performed by the VA.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's]

2

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

     The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

     The Commissioner next evaluates steps four and five of the process--determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the

burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error as alleged by Plaintiff.  The court notes that Plaintiff does not allege error in the physical RFC assessed, and the court's analysis does not address that issue.

## II.   Discussion

Plaintiff argues that the ALJ "virtually overlooked the VA's C&P exams and disability ratings," and failed to recontact his treating physician, Dr. Bradshaw, or to order a consultative examination.  (Pl. Brief 9).  Specifically, he argues that the ALJ provided inadequate bases to discount Dr. Bradshaw's opinion that Plaintiff's "PTSD and TBI make him unemployable in the competitive market," id. at 12 (quoting R. 27) and argues that "the ALJ only mentions the VA disability rating in passing." Id. at 14 (citing R. 25).

The Commissioner argues that the ALJ properly considered Dr. Bradshaw's opinion and the evidence from the VA.  (Comm'r Br. 5).  She points to the ALJ's decision and the record evidence and argues that the decision is supported by substantial evidence.  Id. at 6-8.  She argues that the ALJ had no duty to recontact Dr. Bradshaw, and the cases Plaintiff relies upon are distinguishable from this case.  Id. at 8-9.  She argues

4

that the VA disability rating and the C&P exams were adequately considered in the circumstances of this case. Id. at 10-12.

In his Reply Brief, Plaintiff reasserts the arguments from his Social Security Brief. He also argues that the cases relied upon in his Brief are not so easily distinguishable as the Commissioner argues, and that Dr. Bradshaw did opine regarding functional limitations. (Reply 1-2).

### A. Consideration of VA Disability Rating and C&P Exams

Plaintiff complains that "the ALJ only mentions the VA disability rating in passing," and that "[a]lthough findings by other agencies are not binding on the [Commissioner], they are entitled to weight and must be considered." (Pl. Br. 14) (citing Baca v. Dep't of Health & Human Servs., 5 F.3d 476, 480 (10th Cir. 1993)). What Baca requires is precisely what occurred here. As Plaintiff argues, a disability determination made by another agency is not binding on the Social Security Administration. 20 C.F.R. § 404.1504. And here the ALJ considered the VA disability rating. (R. 25) ("The claimant has a 90% service connected disability through VA."). The problem the Baca court found was, in that case the Social Security Administration (SSA) found the evidence submitted to it was inadequate, in part, because the VA records submitted to the agency "began more than a year after the expiration of [the claimant's] insured status," and the district court found "that the VA's disability determination was not relevant." Baca, 5 F.3d at 478. Therefore, after the Tenth Circuit decided remand was necessary, it instructed the agency to "make every reasonable effort to obtain the records from the VA." Baca, 5 F.3d at 480. In this case, on the other hand, the ALJ specifically

5

considered the VA disability rating, and extensively considered and discussed Plaintiff's treatment records before the VA between at least March 2016 (R. 475) and October 2017 (R. 675) comprising a total of 241 pages of the record. (R. 400-06, 414-625, 632-45, 673-80).

Plaintiff also argues that the ALJ virtually overlooked the C&P exams, arguing that Dr. Bradshaw's "opinions appear consistent with the C&P exam evidence" (Pl. Br. 11, see also 14), and that Dr. Bentley's C&P exam found Plaintiff met all the diagnostic criteria of post-traumatic stress disorder (PTSD). Id. at 13. Plaintiff's assertion that the ALJ "virtually overlooked" the C&P exams is demonstrably false, in that the ALJ stated that she had considered "the entire record," extensively discussed and cited the VA medical records, and specifically discussed and cited Dr. Vaughan's C&P psychological examination dated August 13, 2014. (R. 25) (citing Exs. 6F/51, 52, R. 552-53) ("The claimant did allege that he had some issues remembering instructions, and that he would forget instructions after about 5 minutes." "The claimant indicated that he enjoyed participating in activities with his children, and also fished, hunted and rode motorcycles for recreation and leisure."). Moreover, as did Dr. Bentley, the ALJ specifically found that Plaintiff has the "severe" medically determinable impairment of PTSD along with traumatic brain injury and degenerative disc disease. (R. 22). Plaintiff has shown no error in the ALJ's consideration of the VA's disability rating or of the C&P exams.

### B.   Dr. Bradshaw's Opinion

The ALJ assessed the following mental RFC for Plaintiff:

6

> The claimant can perform medium exertion work with little to no changes in the work setting, in an environment with a moderate noise level and can carry out job tasks with 1-2 step instructions. The claimant can have occasional interaction with co-workers and supervisors and no interaction with the general public.

(R. 24) (bold omitted). Because it must be considered as a whole, the court quotes the ALJ's discussion and analysis of Plaintiff's mental capabilities in its entirety:

> The claimant reported PTSD, TBI [(traumatic brain injury)], depression and short-term memory. In a discussion regarding his mental condition, the claimant alleged that noises at work and unexpected sounds worsened his PTSD. The claimant stated that he was able to perform routine daily activities, but that due to his brain injury, moderate in intensity, activities were worse when he had too many commands. The claimant said that keeping his life organized helped his condition. The claimant alleged no other problems with perception, thinking, feeling or behavior. The claimant alleged that his conditions limited him from being employable in the competitive market. The claimant alleged that he had tried to work but had to stop due to his ongoing mental symptoms. The claimant reported drinking about a 6-pack of beer a week but denied getting drunk (Exhibit 11F/13). The claimant and the therapist discussed ways to cope with memories consistent with his PTSD. The claimant did note that he was having less episodes of anger. Information in the claimant's mental status examination revealed that he was oriented with normal and logical thought processes. The claimant denied hallucinations, delusions or suicidal ideation. Judgment and insight were good, and memory, attention and concentration intact. Mood was within normal limits.
>
> The claimant presents to the VA for his PTSD. While the undersigned notes that his treating psychiatric physician notes that symptoms are severe, treatment notes failed to show the limitations that the claimant lists repeatedly in his visits (Exhibits 2F/4F/5F/6F/11F/13F). Further, there is no indication that they are actually still occurring on a regular basis. There is also no mention in the record of how the limitations impact the claimant's daily activities.
>
> In his activities of daily living report, the claimant stated that he spent time caring for his children and household pets. The claimant alleged that he did not leave the house, but this is inconsistent with statements that he takes his children to school, fishes, and interacts with friends and family. The claimant also stated that he was able to care for his personal needs, prepare

7

meals and do yard work and laundry. The claimant did allege needing reminders to take his medication. The claimant also drives, and shops on the computer. The claimant did note that he was not able to go out alone and due to his low stress tolerance, he had difficulty getting along with others (Exhibit 11E).

In a visit with the VA in May 2017, the claimant stated that he planned to go to the lake on July 4th (Exhibit 6F). This is inconsistent with his claims that he does not leave the house. Further, while the claimant alleged he could not go out alone, however he taking [sic] his children to school, in addition to attending medical appointments, fishing, and engaging in body-building at the gym. The claimant worked out at the gym until July 2016.

At the hearing, the claimant testified that he had anxiety attacks, and that he left his education job due to his inability to engage with people. The claimant did note that he had a group of friends whom he got together with on a weekly basis. He also noted that he attended his children's sporting events (but stayed in the car). The claimant testified that he also went out to eat with his spouse but that he made sure he could see everywhere. The claimant testified that he was able to perform household chores, read, work puzzles, and could focus on tasks for a short period- of- time.

The claimant's testimony is limiting but not supported in the record. Other, that [sic] the claimant's diagnosis of PTSD, he has had no recent hospitalizations, medication changes or periods of decompensation. The undersigned finds that the claimant has some limitations secondary to his alleged mental complaints but none that would prevent him from working within the residual functional capacity listed above.

The undersigned has considered the opinion of Samuel Bradshaw (Exhibit 4F/42 and 11F/12) who stated that the claimant's PTSD and TBI make him unemployable in the competitive market. Ability to work is an opinion reserved to the Commissioner. Therefore, the undersigned affords the opinions no weight.

. . .

The State agency psychological consultants opined that the claimant had no more than moderate functional limitations (Exhibit 1A/4A). This is consistent with reported activities, information in mental status examinations, and lack of recent hospitalizations or medication changes. Therefore, the undersigned affords the opinions significant weight.

> In a third party statement from the claimant's spouse, she noted that the claimant was able to care for his personal needs, cook, perform household duties, pay bills, fish, and interact with friends and family. She noted that the claimant had some issues with memory, task completion, concentration and getting along with others (Exhibit 10E). This is consistent with the claimant's statements. Therefore, the undersigned affords the assessment some weight.
>
> In sum, the above residual functional capacity assessment is supported by the medical evidence of record, the record as a whole and the State agency psychological findings.

(R. 26-27).

Although the ALJ specifically stated that she afforded no weight to Dr. Bradshaw's opinions that PTSD and TBI make Plaintiff unemployable because ability to work is an issue reserved to the Commissioner, Plaintiff also acknowledges that the ALJ relied on three other bases to discount the opinion--treatment notes failed to show the limitations Plaintiff lists repeatedly in his visits, there is no indication his alleged limitations are actually still occurring on a regular basis, and there is no mention how the limitations impact his daily activities. (Pl. Br. 11-12) (citing R. 26).

Plaintiff argues that Dr. Bradshaw did mention how Plaintiff's limitations impact his daily activities, noting six areas of "problems:" In concentration, in carrying out complex orders, with anger management in noisy environments, with crowds, with supervisors, and with anxiety under pressure. Id. at 12 (citing R. 498).[2] The court finds two problems with this argument. First, stating that there is a "problem" in doing

---

[2] Page 498 of the record is apparently a facsimile header sheet and does not contain the information quoted by Plaintiff. However, that information appears on page 499, which is apparently the page intended in Plaintiff's cite.

9

something, or with an environment is not the same as mentioning how that limitation (problem) impacts daily activities. The argument does not negate the ALJ's reason to discount Dr. Bradshaw's opinion.

Second, and perhaps most importantly, the problems to which Plaintiff refers as Dr. Bradshaw's discussion regarding impact on Plaintiff's daily activities are what the ALJ found to be "the limitations that the claimant lists repeatedly in his visits (Exhibits 2F/4F/5F/6F/11F/13F)." (R. 26). Plaintiff argues that the phrase "the limitations that the claimant lists repeatedly in his visits" "remains undefined." (Pl. Br. 12). However, in reviewing the exhibits cited by the ALJ to support her finding, there is a "list" which appears in nearly every one of Dr. Bradshaw's office notes, similar (and in several cases identical) to the six "problem" areas quoted in Plaintiff's Brief. (R. 432, 455, 465, 468, 471, 475, 499, 559-60, 675, 682). In each treatment note, the list is contained within the "S/O" (subjective/objective) section of the treatment note. Id. Invariably, in that section of Dr. Bradshaw's notes there is a paragraph which begins with "Patient reports…," followed by a paragraph beginning "He can do…," and then the numbered list of problems. Id. Thereafter appears a paragraph, beginning as follows: "The above are due to his SC [(service connected)] PTSD and TBI. They make him unemployable in the competitive market. His prognosis is guarded." (R. 432, 455, 465, 468, 471, 475, 499, 560, 675, 682). In all but one case (R. 475), this paragraph ends with sentences explaining that Plaintiff has lost a particular (increasing over time) number of jobs since he was in combat. Id. It is clear that Plaintiff views the numbered list along with the last paragraph as a part of Dr. Bradshaw's "objective" portion of the treatment note. In

10

context, it is equally clear that the ALJ viewed the numbered list as a part of the record of Plaintiff's "subjective" report of symptoms or limitations. While the numbered list might be viewed either way, the question for the court is whether the record evidence will support the ALJ's view. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though [it] would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

That the ALJ's view is supported by the evidence is best illustrated by reference to the relation between the second paragraph of Plaintiff's subjective complaints, the numbered list of problems, and the next paragraph. Here is that discussion as it appears the first time it is recorded in the medical records:

> He can do his ADLs. The TBI is moderate in intensity. It is worsened by having many commands. It is helped with an organized life. No other problems with perception, thinking, feeling or behavior. He is able to work but it is difficult due to:
>
> 1. Problems in concentration
> 2. Prob[l]ems in carryout [sic] complex orders
> 3. Problems with anger management in noisy environments
> 4. Problems with crowds
> 5. Prob[l]em[]s with supervisors
>
> The above are due to his SC PTSD and TBI. They make him unemployable in the competitive market. His prognosis is guarded.

(R. 475). The first paragraph states Plaintiff's report of how his impairments affect him. It ends with his report that he "is able to work but it is difficult due to" his problems,

11

which are then listed. The last paragraph states Dr. Bradshaw's objective understanding of Plaintiff's reports--that Plaintiff's reported problems are due to his PTSD and TBI and they make him unemployable. This is in direct contrast to Plaintiff's report in the first paragraph that he is able to work although his problems make it difficult. The quoted language is used in Dr. Bradshaw's treatment notes for the first five times they appear in the record--between March 31, 2016 and November 9, 2016. (R. 455, 465, 468, 471, 475). On April 19, 2017, Plaintiff reported a 6th problem, "Problems with anxiety under pressure," and that he was now <u>unable</u> to work due to his problems. (R. 432). In the last paragraph, Dr. Bradshaw continued to report that Plaintiff was unemployable. This language is used in Dr. Bradshaw's treatment notes for the last five times they appear in the record--between April 19, 2017 and October 20, 2017. (R. 432, 499, 559-60, 675, 682). While there is evidence from which it might be concluded that the problem list is Dr. Bradshaw's opinion, the evidence also supports the inference that the problem list is Plaintiff's subjective report. Therefore, it was not error to find Dr. Bradshaw's treatment notes do not show the limitations Plaintiff repeatedly reported to the psychiatrist and that Dr. Bradshaw did not mention how the limitations impact Plaintiff's daily activities.

Plaintiff does not directly deny the ALJ's finding that there is no indication all of Plaintiff's reported symptoms are still occurring, but instead argues there is no "dipstick" test for PTSD, that the technique for diagnosing such an impairment is to assess signs and symptoms in accordance with the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u>, and that "assessment is usually based on a patient's subjective reports and the psychologist's own observations." (Pl. Br. 12)

12

(quoting Schwarz v. Barnhart, 70 F. App'x 512, 518 (10th Cir. 2003)). Plaintiff is correct in her assertion, but the ALJ accepted Dr. Bradshaw's diagnosis of PTSD--and more, for she found that Plaintiff's PTSD is a "severe" impairment within the meaning of the Act and regulations--although a diagnosis alone is insufficient to support a finding that an impairment is "severe." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). Moreover, Plaintiff's argument does not negate the ALJ's finding that there is no indication all of Plaintiff's reported symptoms are still occurring, and that finding is supported by the record evidence.

Plaintiff has not shown that the reasons given by the ALJ to discount Dr. Bradshaw's opinion are erroneous. But, he advances other reasons to attack the ALJ's finding. First, he argues the "ALJ could have re-contacted Dr. Bradshaw consistent with the standards for assessing treating opinions laid out in Daniell [v. Astrue], 384 F. App'x [798,] 800–01 [(10th Cir. 2010).]" (Pl. Br. 13). As the Commissioner argues, if she finds that the evidence is insufficient to make a decision, she may take a number of different steps to resolve the insufficiency, including recontacting a treating physician. 20 C.F.R. § 404.1520 (2016). However, the cases relied upon by Plaintiff considered decisions of the Commissioner decided before March 26, 2012, the effective date of a final rule "modifying the requirement to recontact your medical source(s)." How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651 (Feb. 23, 2012) (codified at 20 C.F.R. Pts. 404 and 416). As Plaintiff points out, for decisions issued before that date, the regulations required that if the evidence was insufficient to make a decision, the ALJ must recontact the treating source. 20 C.F.R. § 404.1512(e)(1) (2011). That is no longer

13

a requirement. Moreover, the ALJ here did not find that the evidence was insufficient to make a decision and Plaintiff has not demonstrated that it was.

Plaintiff next alleges error because an ALJ may only reject the opinion of a treating physician on the basis of contradictory medical evidence. As the Commissioner points out however, the state agency psychologists' opinions are just such medical evidence which contradict Dr. Bradshaw's opinion and provides a basis to reject it.

As Plaintiff argues, although ability to work is an issue reserved to the Commissioner, that fact alone is insufficient to reject a treating physician's opinion outright. In this case however, that was not the only basis relied upon by the ALJ to discount Dr. Bradshaw's opinion. The second paragraph of the ALJ's discussion and analysis of Plaintiff's mental capabilities as quoted above reveals that the ALJ considered the records of Plaintiff's "treating psychiatric physician"--Dr. Bradshaw--and provided the three additional reasons discussed above to discount his opinion. (R. 26). While it might have been preferable for the ALJ to have listed those reasons in the same paragraph in which she found that Dr. Bradshaw's opinion was on an issue reserved to the Commissioner and announced her decision to afford his opinions no weight. That is not essential. What is essential is that "the notice of determination or decision 'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Soc. Sec. Ruling (SSR) 96–2p, 1996 WL 374188, at *5). That standard is met here. The court finds no error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 11, 2019, at Kansas City, Kansas.

                                        s:/ John W. Lungstrum
                                        **John W. Lungstrum**
                                        **United States District Judge**